```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES OF AMERICA,       :

        -against-               :

VICTOR LORENZANO,               :
   a/k/a "Vic,"
JOSEPH VUKSANAJ,                :   S6 03 Cr. 1256 (JFK)
   a/k/a "Zef,"
RAMON REYES,                    :
   a/k/a "Doctor," and              OPINION and ORDER
VICTOR PEREZ,                   :
   a/k/a "Rubio,"
                                :
        Defendants.
-------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/26/05

APPEARANCES:

    For the United States of America,
        DAVID N. KELLEY
        United States Attorney for the
        Southern District of New York
        New York, New York
        Of Counsel:  Joshua A. Goldberg
                      Elizabeth F. Maringer
                      Assistant United
                        States Attorneys

    For Defendant Victor Lorenzano:
        Jeremy Schneider, Esq.
        Rothman, Schneider,
        Soloway & Stern, LLP
        New York, New York

    For Defendant Joseph Vuksanaj:
        Anthony F. Siriano, Esq.
        Siriano & Bernstein, PC
        Bronx, New York

    For Defendant Ramon Reyes:
        Mark S. DeMarco, Esq.
        Bronx, New York

**JOHN F. KEENAN, United States District Judge**

**JOHN F. KEENAN, United States District Judge:**

**<u>Preliminary Statement</u>**

Defendants Victor Lorenzano, Ramon Reyes, and Joseph Vuksanaj move for (1) an order requiring additional pretrial discovery, including disclosure of the identities of confidential informants and cooperating witnesses; (2) a bill of particulars; (3) dismissal of the indictment; and (4) severance.

**<u>Factual Background</u>**

Defendants are charged in a twenty-four count superseding indictment with participating in a conspiracy between 1995 and "late 2001" to commit "armed robberies and attempted armed robberies of persons engaged in narcotics trafficking and/or commercial activities," in violation of the Hobbs Act and other federal criminal statutes. The charges arise from the defendants' alleged participation in a gang that targeted narcotics dealers and others for violent robberies. The Government claims that "santeros," or tipsters supplied information to the gang about targets who had large amounts of narcotics or narcotics proceeds. Members of the gang are said to have surveilled these people and held them up. Defendants allegedly gained access to a victim's apartment either by force or by ruse, often posing as law enforcement officers. The gang members often bound their victims and, at gunpoint, threatened to torture or kill them. Several victims were allegedly injured. The Government maintains that during the course of the

conspiracy, members of the gang obtained millions of dollars worth of narcotics and narcotics proceeds.

The superseding indictment contains the following allegations:

> Count One charges the defendants with Hobbs Act robbery conspiracy, in violation of 18 U.S.C. § 1951.
>
> Counts Two through Eleven each charge various defendants with individual substantive Hobbs Act robberies, in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 2. Specifically, Lorenzano is charged in Counts Three, Six and Ten, Reyes is charged in Count Eight, and Vuksanaj is charged in Counts Two, Three, Four, Six, Nine and Ten.
>
> Counts Twelve through Twenty each charge various defendants with using, carrying and brandishing a firearm during and in relation to a crime of violence, or aiding and abetting the same, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2. Specifically, Lorenzano is charged in Counts Thirteen, Fifteen and Nineteen, Reyes is charged in Count Seventeen, and Vuksanaj is charged in Counts Twelve, Thirteen, Fifteen, Eighteen and Nineteen.

Count Twenty-One charges Vuksanaj with using, carrying and possessing a firearm that was discharged during and in relation to the armed robbery charged in Count Four of the Indictment, and aiding and abetting the same, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 18 U.S.C. § 2.

Count Twenty-Two charges the defendants with participating in a narcotics conspiracy, in violation of 21 U.S.C. § 846.

Counts Twenty-Three and Twenty-Four each charge defendant Victor Lorenzano with money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 18 U.S.C. § 2.

Counts One, Twenty-Two, Twenty-Three and Twenty-Four each also contain forfeiture allegations pursuant to 18 U.S.C. § 982.

## THE MOTIONS

Lorenzano and Reyes seek:
(1) all Brady v. Maryland, 373 U.S. 83 (1963) material;
(2) all Giglio v. United States, 405 U.S. 150 (1972) or impeachment material far in advance of trial;
(3) early notice of prior bad acts evidence that may be

3

offered under Federal Rule of Evidence ("FRE") Rule
404(b);

(4) early disclosure of the identity of confidential informants and cooperating witnesses;

(5) a bill of particulars.

Lorenzano also wants to file a severance motion based on Bruton v. United States, 391 U.S. 123 (1968), if and when the Government provides additional information regarding statements made by Joseph Vuksanaj during proffer sessions.

Reyes further seeks:

(1) dismissal of the indictment as insufficient;

(2) severance based on prejudicial spillover from his co-defendants; and

(3) disclosure of "specific evidence the Government intends to use in its evidence in chief at trial" so that he may then move to suppress.

Vuksanaj has joined in the motions filed by Reyes.

**Discovery; Brady, Giglio, FRE 404(b), Confidential Informants and Bill of Particulars**

The Government claims that since as early as November 21, 2003, it has complied with the requirement of Federal Rule of Criminal Procedure ("FRCrP") 16. It has produced "numerous items of discovery, including . . . search warrants, police reports, property vouchers, medical records, documents showing the existence of the conspiracy, credit reports, documents pertaining to property owned by the defendants such as vehicle registrations, copies of drivers licenses, audio tapes and sprint

4

reports, and information regarding identifications made of the defendants.  The Government also has disclosed both the existence and substance of statements made by Joseph Vuksanaj during proffer sessions with the Government.  While the Government has disclosed that cooperating witnesses -- among others - - will be called to testify, the Government has not named such cooperating witnesses in order to protect their safety and the safety of their families."  (Government Brief, p. 3 and 4).  The Government has not yet turned over witness statements or the nature of any impeachment material.  The prosecution states that it "understands its <u>Brady</u> obligation and, to date, is aware of no evidence that could be construed in any way as exculpatory to the defendants.  Should the investigation reveal any such material in the future, it will be provided to the defendants promptly."  (Government Brief, p. 4).

      The principal <u>Lorenzano</u> argument about <u>Brady</u> material revolves around the fact that the first four superseding Indictments all charged him with participating in a robbery that took place "in or about Fall 1999."  Lorenzano then supplied a FRCrP 12.1(a)(2) alibi notice (May 10, 2004) stating that he was in prison on a state parole violation during the fall of 1999. On May 14, 2004, the Government wrote to Lorenzano's counsel saying that "in or about Fall 1999" supplied an "approximate date" for the robbery and that an investigation was progressing to determine "the exact date of the robbery."  Discovery provided by the Government showed that the robbery in question actually

5

occurred on March 14, 2000. Superseding Indictment 5 was filed on May 25, 2004 charging the robbery on March 14, 2000 and this robbery is now the subject of Counts 6, 15 and overt act (e) of Count 22 of the instant Indictment (S6).

The defense suggests that "charging the robbery on March 14, 2000 was a direct result of Mr. Lorenzano providing an iron clad alibi that prompted the government to re-interview certain witnesses who had provided the initial inaccurate information." (Lorenzano Brief, p. 4). The argument goes on that this change of date is material and must be the result of a changed statement by a co-conspirator and thus is Brady material.

The Government Brief at p. 8 and 9 rebuts the Lorenzano contention stating that "[t]here is no basis for Lorenzano's assumption that any co-conspirator's statement changed over time." Rather, the Government says that the correct March 14 date was uncovered because of a police report, that this police report was supplied during discovery and in any event this is not Brady material even if a co-conspirator changed a statement. The Government is turning over all "Jencks Act materials" (18 U.S.C. 3500) by Friday May 20, 2005. Since the Government is turning over all this material some 12 days before trial, there really is no issue. The Government has acknowledged that it is aware of its Brady obligations and the Court knows of no reason to doubt this or the fact that the Government will abide by its obligation. The early production of the 3500 material also resolves any Giglio issue that might exist.

6

Defendants also want the Government to disclose any evidence to be offered under FRE 404(b). Reyes asks for an order precluding the Government from introducing any such evidence. The Government has agreed to disclose any prior bad acts in a timely fashion before trial and argues that the rule sets no specific time for the Government to provide such notice.

As to the Reyes request, the application is obviously premature and ignores FRE 404(b) and Second Circuit law. No ruling can be made until I know what the proffered evidence is.

Concerning the Government position, it is all well and good for them to say we will make the disclosure in "timely fashion." But, the defense has to prepare and perhaps move relative to an offer of such evidence. If the defense moves to preclude, the Government will want to answer and I will have to rule. This should all be done pre-trial so everyone involved knows what we are trying. FRE 404(b) disclosure and notice shall be supplied to the defense no later than May 20, 2005. This case was first before me on October 22, 2003. By now, the Government should know its FRE 404(b) evidence and its theory of the case.

The Indictment charges some specific and some approximate dates for all robberies charged. It also alleges the names of participating co-defendants, adequate data relating to the narcotics and firearms charges and, in most instances, a detailed description of the locations of the criminal activity. In a few instances, e.g., Counts 4, 7, 16 and 23 a more general description is provided. A Bill of Particulars is not required

7

under FRCP 7(f) in this case. The charges are more than specific enough to be defended and there is no problem concerning double jeopardy. Bills of Particulars are not discovery tools. United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990). Once the defendant is advised and has notice of the charges he faces, that is sufficient. The Indictment here adequately tells each defendant what he faces and obviates any need for a Bill of Particulars.

Defendants want the identities of the confidential informants and cooperating witnesses.

There is no requirement that the Government disclose the identity of its witnesses before trial, absent "a <u>specific</u> showing that disclosure [is] both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case." United States v, Cannone, 528 F.2d 296, 301 (2d Cir. 1975). The Government is not required to produce the names of any witnesses or a trial witness list this far in advance of trial in the absence of any particularized showing of need by the defense. See United States v. Yu, 1994 WL 414352, at *2 (S.D.N.Y. Aug. 8, 1994). "The prosecution [is] under no obligation to give [a defendant] advance warning of the witnesses who [will] testify against him." United States v. Alessi, 638 F.2d 466, 481 (2d Cir. 1980). Without the particularized showing, a demand for a witness list "is nothing but that - a demand, accompanied by no particularized showing of need." United States v. Baiad, 1990 WL 58058, at *2 (S.D.N.Y. May 2,

8

1990).  "The burden is on the defendants to make some particularized showing of need, beyond the obvious assertion that such a list would facilitate preparation for trial."  United States v. Pastor, 419 F. Supp. 1318, 1330 (S.D.N.Y. 1976).

There has been no particularized showing of a need for witness' identification and the defendants' request for names is denied at this time.

As the Government observes at p. 7 of its brief, it "is greatly concerned for the safety of its witnesses and their families, particularly in light of the fact that the defendants in this case are each charged with violent armed robberies." (citing United States v. Malinsky, 19 F.R.D. 426, 428 (1956)). The point is properly made that civil and criminal discovery are not comparable.

The motion to disclose the names of confidential informants and cooperating witnesses is denied at this time. When jury selection begins, the Court expects the Government to supply a witness list which will contain the names of the cooperators and confidential informants.

### **Dismissal**, **Severance** **and** "**Specific Evidence**"

Defendant Reyes moves for a dismissal of the Indictment based on its failure "to be specific enough to permit the defendant to prepare a defense, thereby violating his Sixth Amendment right to "'be informed of the nature and cause of the accusations' against him."  (Reyes Br. at 1).  Defendant Vuksanaj joins in Reyes' motion.  This claim is frivolous.  FRCrP 7(c)(1)

9

provides that "The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  An "indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against him."  <u>United States v. Velastegui</u>, 199 F.3d 590, 592 n.2 (2d Cir. 1999); <u>United States v. Walsh</u>, 194 F.3d 39, 44 (2d Cir. 1999).

The rule is that "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." <u>United States v. Alfonso</u>, 143 F.3d 772, 776 (2d Cir. 1998); <u>accord</u> <u>Walsh</u>, 194 F.3d at 44.  An indictment is sufficient "unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant [wa]s convicted."  <u>United States v. Orena</u>, 32 F.3d 704, 714 (2d Cir. 1994).  In addition, because an indictment's purpose is to "fairly inform[] a defendant of the charge against which he must defend," <u>Alfonso</u>, 143 F.3d at 776 (quoting <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974)), the Second Circuit has "repeatedly refused, in the absence of any showing of prejudice, to dismiss . . . charges for lack of specificity."  <u>See</u> <u>Walsh</u>, 194 F.3d at 45; <u>United States v Bagaric</u>, 706 F.2d 42, 61 (2d Cir. 1983).

The motion to dismiss the Indictment for lack of specificity is denied.

Arguing that he is a "minor defendant" (Reyes brief, p. 3) where "only a small portion of the evidence is relevant to him," Reyes, joined by Joseph Vuksanaj, moves for a severance under FRCrP 14(a). The Rule allows the Court to grant a severance if joinder "appears to prejudice a defendant or the government." FRCrP 14(a). The Supreme Court ruled that a severance is warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993).

The standard for severance reflects a settled rule of criminal law: "For reasons of economy, convenience and avoidance of delay, there is a preference in the federal system for providing defendants who are indicted together with joint trials." United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003). The Supreme Court has wisely said that joint trials "play a vital role in the criminal justice system." Richardson v. Marsh, 481 U.S. 200, 209 (1987). Not only do they promote efficiency, but they also "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Id. at 210; see also United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998) (which quotes Richardson and explains that "[i]t would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again,

11

requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand").

There is a presumption in favor of joint trials in the Second Circuit. In United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993), the Court wrote: "[t]he principles that guide the district court's consideration of a motion for severance usually counsel denial." The presumption favoring joint trials is particularly strong where, as here, "the crime charged involves a common scheme or plan" among all defendants. United States v. Girard, 601 F.2d 69, 72 (2d Cir. 1979).

In Rosa, defendant Rodriguez was convicted of possessing with intent to distribute heroin in connection with a wholesale and retail narcotics organization, while his co-defendants were convicted of crimes of violence, including kidnapping and assault resulting in serious bodily injury in aid of the organization. See Rosa, 11 F.3d at 324. The evidence showed that Rodriguez' role was to package heroin. See id. at 325. In affirming the District Court's denial of Rodriguez' severance motion, Judge Kearse, writing for a unanimous panel, said:

> [T]hough Rosa and Rodriguez personally were not charged with acts of violence, the evidence was ample that each of them was an integral part of the conspiracy, Rodriguez as a heroin processor . . . . Evidence of the workings of the conspiracy would therefore have been admissible at the individual trials of Rosa and Rodriguez, had they been trial separately. Since the evidence

12

> was that the Organizations's routine modus
> operandi involved the use of murder and mayhem to
> exclude competitors from its retail drug spots and
> to maintain discipline among its members, the acts
> of violence performed by other coconspirators
> were chargeable to Rosa and Rodriguez, and their
> claims of prejudicial spillover must be rejected.

Id. at 341-42. Reyes' motion for a severance is denied.

Mr. Lorenzano at p. 20 of his brief states:

> "THE GOVERNMENT SHOULD GIVE NOTICE OF ANY
> CO-DEFENDANTS' ADMISSIONS OR CONFESSIONS.
> MR. LORENZANO REQUESTS LEAVE TO FILE A
> MOTION TO SEVER, PURSUANT TO BRUTON V. UNITED
> STATES, 391 U.S. 123 (1968), BASED ON FURTHER
> INFORMATION THE GOVERNMENT MAY PROVIDE
> REGARDING CO-DEFENDANTS STATEMENTS.

The Government responded, at p. 25 of its Brief, that on March 22, 2005 (one month and five days after the Lorenzano brief) it "provided all defendants with redacted copies of all notes taken during proffer sessions attended by Vuksanaj. This disclosure should provide the defendants with sufficient information upon which to base any motions they may seek to file. Accordingly, this aspect of the defendants' motions is now moot." The Court has no knowledge of what is in the Vuksanaj redacted statements so I cannot rule on the propriety of Bruton motions. If a defendant feels such a motion is appropriate, he should move immediately so this can be resolved pre-trial.

Defendant Reyes asks for an order requiring the Government to "reveal the specific evidence it intends to use in its case in chief at trial pursuant to Fed. R. Crim. 12(d)(2)." (Reyes Brief at 3). Reyes seeks this disclosure "so that Defendant can move to suppress such evidence pursuant to Fed. R.

Crim. P. 12(b)(3)." (Reyes Br. at 4). Again, defendant Joseph Vuksanaj has joined in this motion. There is no FRCrP 12(d)(2).

If the request is for a preview of the Government's evidence, there is no Rule or authority warranting such.

The Government has supplied extensive discovery and, if a motion to suppress was appropriate, the discovery (p. 5, 6 supra) provided would have resulted in same. There has been no such motion.

Other than to the degree noted above, defendant's motions are denied.

**SO ORDERED.**

Dated: New York, New York
April 26, 2005

/s/ John F. Keenan
―――――――――――――――――――
JOHN F. KEENAN
United States District Judge