**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
|    -against- | : |
| | : |
| VICTOR LORENZANO, | : |
| | : |
|                        Defendant. | : |

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _02/24/2021_____
```

No. 03 Cr. 1256 (JFK)

**OPINION & ORDER**

------------------------------------X

APPEARANCES

FOR DEFENDANT VICTOR LORENZANO:
    Pro Se

FOR THE UNITED STATES OF AMERICA:
    T. Josiah Pertz
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a motion by Defendant Victor Lorenzano seeking a sentence reduction to time served and his immediate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), commonly known as the compassionate release statute. The Government opposes Lorenzano's motion as substantively meritless because he has not demonstrated the required "extraordinary and compelling reasons" for a reduction in sentence and the 18 U.S.C. § 3553(a) sentencing factors do not warrant a modification to Lorenzano's term of imprisonment. For the reasons set forth below, Lorenzano's motion is DENIED.

**I. Background**

Unless otherwise noted, the following is taken from the materials the parties submitted, Lorenzano's Presentence

Investigation Report ("PSR"), dated September 22, 2006, and the transcript of Lorenzano's January 16, 2007 sentencing.  In ruling on Lorenzano's request, the Court has considered the arguments advanced in his motion, (ECF No. 247), the Government's letter in opposition, (ECF No. 249), and Lorenzano's reply, (ECF No. 252).

On June 29, 2005, Lorenzano was convicted by a jury of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951; three counts of substantive Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2; three counts of using, carrying, and possessing a firearm during and in relation to a crime of violence or drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2; conspiracy to distribute and possess with intent to distribute five kilograms and more of cocaine and one kilogram and more of heroin, in violation of 21 U.S.C. §§ 846, 812, 841(a)(1), and 841(b)(1)(A); and one count of money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.  (PSR ¶¶ 2–13.)  The charges stemmed from Lorenzano's role in a violent armed robbery crew which predominantly targeted drug dealers in the Bronx and Manhattan. (Id. ¶¶ 26–29.)  From 1995 until at least 2001, Lorenzano and others robbed dozens of drug dealers and stole massive amounts of cocaine and heroin.  (Id.)  In total, the robbery crew stole approximately four to five million dollars' worth of property.

(Id. ¶ 28.)  At trial, the Government established that Lorenzano
and his co-conspirators received information from tipsters about
individuals who were holding large amounts of money or drugs,
and the crew then robbed those individuals using firearms and
other devices.  (Id. ¶ 26.)  Lorenzano's victims were
threatened, beaten, burned, pistol-whipped, and tortured.  (Id.
¶ 27.)  During many of the robberies, Lorenzano brandished a
loaded firearm and pistol-whipped the robbery's victims.  (Id.
¶¶ 26-49.)  On one occasion, Lorenzano stabbed a victim in the
leg with a 13-inch knife causing the victim to bleed so
profusely that one of Lorenzano's co-conspirators had to fashion
a tourniquet to stem the bleeding.  (Id. ¶ 39.)

    Lorenzano's sentencing occurred on January 16, 2007, during
which the Court found a Guidelines sentencing range of 87 years
to life.  (Sent. Tr. at 10:5-12:12.)  Lorenzano's counsel
requested that he be sentenced to the mandatory minimum of 67
years' incarceration which, she explained, "basically is a life
sentence."  (Id. at 5:25-6:3.)  The Court noted its deep
familiarity with the facts of this case, having presided over
Lorenzano's lengthy trial.  (Id. at 10:5-8.)  The Court also
noted that Lorenzano "participated in numerous crimes" and "took
part in a series of violent, vicious robberies," one of which
nearly killed one of Lorenzano's victims.  (Id. at 10:18-11:7.)
The Court sentenced Lorenzano to 87 years' imprisonment to be

followed by five years of supervised release.  (Id. at 12:12-
23.)  On June 2, 2010, the Second Circuit affirmed Lorenzano's
conviction.  See United States v. Lorenzan[o], 380 F. App'x 13,
14 (2d Cir. 2010).  To date, Lorenzano has served approximately
17 years in prison, which is equal to approximately one-fifth of
his total sentence.  He is scheduled for release on September
23, 2080.  See Find an Inmate, Fed. Bureau of Prisons,
https://www.bop.gov/inmateloc/ (last visited Feb. 17, 2021).

On December 10, 2020, Lorenzano, proceeding pro se,
submitted a motion requesting that his sentence be reduced to
time served.  (ECF No. 247.)  Lorenzano's motion explained that
he warrants release because (1) he was sentenced under 18 U.S.C.
§ 924(c), which Congress later amended to eliminate the so-
called "stacking" provision; (2) his current sentence is unfair;
(3) he has matured and made significant efforts at
rehabilitation while in prison, and thus, he does not present a
danger to the public; and (4) he is 50 years old, suffers from
asthma, high blood pressure, and hyperlipidemia, and he is
deeply worried about his well-being should he contract the
coronavirus, COVID-19.  On December 31, 2020, the Government
opposed Lorenzano's request on the grounds that no extraordinary
and compelling reasons support his release which, in any event,
would be inappropriate under the sentencing factors set forth in
18 U.S.C. § 3553(a).  (ECF No. 249.)  On January 27, 2021,

Lorenzano filed a reply in which he reiterated his request for release and argued that he is similarly situated to certain other defendants to whom a small number of courts have ordered reductions in sentence.  (ECF No. 252.)

## II.  Discussion

### A.  Legal Standard

18 U.S.C. § 3582(c)(1)(A) allows a court to modify a term of imprisonment "upon motion of the defendant" provided the defendant has exhausted certain administrative requirements. 18 U.S.C. § 3582(c)(1)(A).  Under these circumstances, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A)(i).  In doing so, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. § 3582(c)(1)(A).  "Application of the § 3553(a) factors requires an assessment of whether the relevant factors outweigh the extraordinary and compelling reasons warranting compassionate release and whether compassionate release would undermine the goals of the original sentence." United States v. Daugerdas, --- F. Supp. 3d ---, No. 09 Cr. 581 (WHP), 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (brackets, ellipsis, and internal

quotation marks omitted) (quoting <u>United States v. Ebbers</u>, 432
F. Supp. 3d 421, 430-31 (S.D.N.Y. 2020)).

In the Second Circuit, the policy statement issued by the
U.S. Sentencing Commission pertaining to compassionate release,
section 1B1.13 of the Sentencing Guidelines, "is not
'applicable' to compassionate release motions brought by
defendants," and "cannot constrain district courts' discretion
to consider whether any reasons are extraordinary and
compelling." <u>United States v. Brooker</u>, 976 F.3d 228, 236 (2d
Cir. 2020).  Accordingly, as the court in <u>United States v.
Harris</u>, No. 15 Cr. 445 (PAE), 2020 WL 5801051 (S.D.N.Y. Sept.
29, 2020), explained:

> when assessing a motion brought directly by an
> imprisoned person rather than by the BOP, the Court is
> constrained neither by [§] 1B1.13's enumeration of
> extraordinary and compelling reasons, nor by its
> freestanding requirement that the defendant seeking
> release not pose any danger to the community.  Rather,
> the Court may "consider the full slate of extraordinary
> and compelling reasons that an imprisoned person might
> bring before [it] in motions for compassionate release."
> However, even if such reasons are present, the Court
> must also assure itself that release is consistent with
> "the factors set forth in section 3553(a) to the extent
> that they are applicable."

<u>Id.</u> at *2 (footnote and internal citations omitted).

"[<u>P</u>]<u>ro se</u> litigants generally are entitled to a liberal
construction of their pleadings, which should be read 'to raise
the strongest arguments that they suggest.'" <u>Green v. United</u>

States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).

**B.  Analysis**

Lorenzano argues that extraordinary and compelling reasons exist which warrant his immediate release because his current sentence is unfair, he has amassed a remarkable record of rehabilitation, and the COVID-19 pandemic poses undue health risks to him.  (Motion for Reduction in Sentence at 7, ECF No. 247.)  The Court disagrees.  As discussed below, none of the factors cited by Lorenzano—individually or in combination—gives rise to extraordinary and compelling circumstances. Accordingly, Lorenzano's sentence cannot be reduced. See 18 U.S.C. § 3582(c) (stating "court[s] may not modify a term of imprisonment once it has been imposed" absent extraordinary and compelling circumstances); see also United States v. Castillo, No. 03 Cr. 979 (KMW), 2021 WL 268638, at *2 (S.D.N.Y. Jan. 27, 2021) (denying release).

**1.  Amendments to 18 U.S.C. § 924(c)**

Lorenzano first argues that he was given an "unusually long sentence" due to the "stacking" provisions of 18 U.S.C. § 924(c) which was in effect at the time of his sentencing.  Lorenzano argues that Congress's subsequent amendment to the stacking provisions in the First Step Act of 2018 constitutes an

extraordinary and compelling reason to reduce his sentence.  The
Court disagrees.

"Courts weighing the amendments to the stacking provisions
on motions for sentence reductions do not view the change in law
per se as an extraordinary and compelling reason.  Rather, they
analyze the sentence imposed relative to the sentence that would
now be received for the same offense." Castillo, 2021 WL 268638,
at *3 (collecting cases).  Here, Lorenzano was sentenced to 20
years on each of the four Hobbs Act counts and the one money
laundering count.  (Sent. Tr. at 11:13–17.)  Those sentences
were to run concurrently with each other, and consecutive to
Lorenzano's sentences of 10 years' imprisonment on the narcotics
distribution count and 57 years' imprisonment on the "stacked"
firearms counts.  (Sent. Tr. at 11:18–12:11.)  Setting aside,
for the moment, whether Lorenzano's 57-year "stacked" sentence
is fair under Congress's subsequent amendment to § 924(c),
Lorenzano's request for immediate release ignores the fact that
he was sentenced to 30 years on the non-firearms counts alone,
of which Lorenzano has only served approximately 17 years.

Second, Congress specifically chose not to make its
amendment to § 924(c) retroactive. See Pub. L. No. 115-391,
§ 401(c), 132 Stat. 5194, 5221 (2018).  "Though the disparity in
[the defendant's] sentence measured against offenders sentenced
after passage of the First Step Act may seem unfair, that

disparity was clearly contemplated by Congress when it decided
not to make the Act's sentencing reforms retroactive." Musa v.
United States, --- F. Supp. 3d ---, No. 19 Civ. 9130 (RJS), 2020
WL 6873506, at *8 (S.D.N.Y. Nov. 23, 2020) (denying release);
see also Castillo, 2021 WL 268638, at *3 (same); cf. United
States v. Haynes, 456 F. Supp. 3d 496, 516 (E.D.N.Y. 2020)
(explaining "the Congressional decision not to make the § 924(c)
change retroactive spares the courts an avalanche of
applications and inevitable re-sentencings, no doubt in many
cases that do not feature the same grave characteristics
presented here").

Accordingly, the Court cannot conclude that, standing
alone, Congress's recent amendment to § 924(c) constitutes an
extraordinary and compelling reason for a reduction to
Lorenzano's sentence. See Musa, 2020 WL 6873506, at *7.
Further, as discussed below, even if amendment to § 924(c) could
suffice on its own or in combination with the other
individualized grounds that Lorenzano raises, application of the
sentencing factors set forth in 18 U.S.C. § 3553(a) outweighs
such reasons for a modification of Lorenzano's sentence.

## 2.  Length of Lorenzano's Sentence and Rehabilitation

Lorenzano next argues that his sentence should be reduced
because it is unduly long and because he has demonstrated

extraordinary rehabilitation during his 17 years in prison. Once again, the Court disagrees.

First, Lorenzano has not demonstrated that he is no longer a danger to the public. Lorenzano is a "career offender" within the meaning of § 4B1.1 of the Guidelines (PSR ¶ 109) who displayed "viciousness" while in elementary school (id. ¶ 180); was convicted of armed robbery at age 18 (id. ¶¶ 113–14); convicted of attempted robbery, resisting arrest, and possession of drug paraphernalia in his twenties (id. ¶¶ 116–123); and committed the brutal offenses in this case in his late-twenties and early-thirties (id. ¶¶ 26–51). Such a multi-decade record underscores the need for a substantial sentence. Indeed, Lorenzano's motion relies on his self-proclamation that he is sufficiently rehabilitated—Lorenzano does not include any letters from individuals without a personal stake in his request for release, such as Bureau of Prisons ("BOP") officers or Lorenzano's fellow inmates.

Second, Lorenzano's assertion that he was unfairly punished for exercising his right to a jury trial and refusing to plead guilty along with his co-defendants is without merit. "[T]he Supreme Court has stated in no uncertain terms that the government is free to confront a defendant who refuses to plead guilty in advance of trial with more severe charges." Musa, 2020 WL 6873506, at *7 n.9 (citing Bordenkircher v. Hayes, 434 U.S.

357, 364 (1978) and United States v. Stanley, 928 F.2d 575, 581
(2d Cir. 1991)).

Finally, the circumstances in the case law that Lorenzano
cites are readily distinguishable from his own, and they do not
support his argument that his sentence is unusually long or
unfair.  For example, in United States v. Panton, No. 89 Cr. 346
(LAP), 2020 WL 4505915, at *1-2, 9 (S.D.N.Y. Aug. 4, 2020), the
court found extraordinary and compelling circumstances where the
defendant had served 30 years of a life sentence which the
Probation Department had opined as "unduly harsh" prior to his
sentencing and which was imposed following the defendant's
conviction for conspiracy to possess and distribute
approximately 41 kilograms of heroin.  Notably, the defendant's
prior criminal history was minor (two low-level state
misdemeanors, neither of which resulted in a prison term or even
a probationary sentence), his offense conduct did not include
violence, he had developed several serious health issues which
made him more susceptible to COVID-19, and he had a stellar
disciplinary record.  See id. at *2-3, 7-9.  Likewise, in United
States v. Millan, No. 91 Cr. 685 (LAP), 2020 WL 1674058, at *8
(S.D.N.Y. Apr. 6, 2020), the defendant was a non-violent, first-
time offender, who had served more than 28 years of a life
sentence imposed following his conviction for participating in a
large-scale heroin distribution operation.  Despite having had

11

no realistic hope of release, the defendant conducted himself as a model prisoner, demonstrated exceptional character, and received support for a sentence of time served from the BOP staff at his facility based on their belief that, if released, the defendant would be a productive member of society. See id. And, in United States v. Rodriguez, --- F. Supp. 3d ---, No. 00 Cr. 761 (JSR), 2020 WL 5810161, at *1, 4 (S.D.N.Y. Sept. 30, 2020), the court denied the defendant's request for immediate release, but concluded that, after 20 years' imprisonment, a reduction in sentence from life to one of 30 years with a lifetime of supervised release was appropriate where the defendant provided "[a]n extraordinary collection of letters— from fellow inmates, family, friends, and, most important, 27 members of the prison staff" which made clear that he was "wholly rehabilitated." See also United States v. Marks, 455 F. Supp. 3d 17, 27, 33 (W.D.N.Y. 2020) (noting numerous letters from individuals with no obvious stake in the defendant's request for a reduction in sentence—such as BOP officers and fellow inmates—which attested to the defendant's good works during his incarceration); but see Castillo, 2021 WL 268638, at *5 (finding rehabilitation not sufficiently extraordinary and compelling even where three BOP employees wrote positive letters of recommendation).

Accordingly, while Lorenzano's self-proclaimed efforts at rehabilitation are commendable, his criminal conduct in this case, together with his significant prior criminal history, do not give rise to sufficient extraordinary and compelling circumstances warranting a reduction in his sentence.

### 3.  COVID-19

Lorenzano also argues that the deadly pandemic caused by the coronavirus, COVID-19, is an extraordinary and compelling reason for his release.  The Court disagrees.

As a preliminary matter, the Court is sympathetic to the heightened risk certain individuals face from COVID-19. See People at Increased Risk, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited Feb. 17, 2021); see also United States v. Park, 456 F. Supp. 3d 557, 560 (S.D.N.Y. 2020) ("The nature of prisons—crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products—put those incarcerated inside a facility with an outbreak at heightened risk.") (collecting sources).  And, on at least one occasion, it has ruled that the threat posed by the COVID-19 pandemic to a medically "high-risk" and non-violent individual constitutes "extraordinary and compelling reasons" warranting immediate release. See United States v. Smith, 454 F. Supp. 3d 310, 315

(S.D.N.Y. 2020) (granting release to non-violent 62-year-old who suffered from asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma); but see United States v. Seshan, No. 14 Cr. 620 (JFK), 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020) (denying release to 47-year-old despite his "end-stage renal failure and hypertension" and the threat of COVID-19 because, inter alia, defendant had a history of violence and granting the motion would disserve important § 3553(a) sentencing factors).

Here, Lorenzano does not articulate a sufficiently extraordinary or compelling reason why the COVID-19 pandemic warrants his immediate release. According to the Centers for Disease Control and Prevention ("the CDC"), older adults and people of any age who have serious underlying medical conditions may be at higher risk for a severe illness from COVID-19. See People at Increased Risk, Ctrs. for Disease Control & Prevention, supra. Lorenzano's age and relatively minor health issues do not qualify. Lorenzano is 50, significantly younger than the CDC's former high-risk cutoff age of 65. See id. And, while the CDC has listed "moderate to severe" asthma and heart conditions such as "pulmonary" hypertension (a specific and rare type of high blood pressure affecting the lungs and right side of the heart) as potential risk factors for a severe illness from COVID-19, Lorenzano's generalized asthma,

hypertension, hyperlipidemia, and acid reflux cannot be characterized as such.  "The current COVID-19 pandemic is an unprecedented worldwide catastrophe.  But it does not warrant the early release of sentenced inmates in federal prisons convicted of serious, dangerous offenses, like [the defendant], whose medical conditions and risk of contracting the virus cannot be deemed 'extraordinary and compelling.'" United States v. Mood, No. 19 Cr. 113 (VB), 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020) (denying release to 53-year-old with diabetes, hypertension, and obesity where "[t]here is no question that [the defendant] has health issues, but his condition is stable and has been effectively managed by routine monitoring and medication").  Further, Lorenzano does not suffer from other health conditions which rise to the level of COVID-19 risk factors looked to by the CDC and courts, such as cancer or immunocompromization. See, e.g., Park, 456 F. Supp. 3d at 563–64 (granting release to 44-year-old with a documented history of respiratory issues, including severe asthma and immune-compromising diseases); Smith, 454 F. Supp. 3d at 315; but see, e.g., United States v. Mason, No. 96 Cr. 126 (JFK), 2021 WL 37576, at *3 (S.D.N.Y. Jan. 5, 2021) (denying release to 52-year-old with borderline readings for obesity, diabetes, and generalized hypertension).

## 4.  18 U.S.C. § 3553(a) Factors

Finally, and decisive here, even if Congress's amendments to § 924(c), the length of Lorenzano's sentence, his efforts at rehabilitation, and the COVID-19 pandemic provided extraordinary and compelling reasons for a sentence reduction, application of the 3553(a) factors cripples Lorenzano's request and outweighs any justification for early release.  Here, the factors that weigh in Lorenzano's favor, such as the need to provide necessary medical care, are overshadowed by the combined force of "the nature and circumstances of the offense," "the history and characteristics of the defendant," and the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), 3553(a)(2).  The Court is sensitive to Lorenzano's argument regarding a possible disparity between his current sentence and those of similarly charged defendants after 2018—but, again, Congress chose not to make its amendments to § 924(c) retroactive, and, at this time and on the record here, the Court does not deem such a disparity to be "unwarranted." Id. § 3553(a)(6).  Indeed, Lorenzano has only served 17 years of a sentence imposed for offense conduct that is among the most serious and reprehensible the Court has encountered: Lorenzano

16

engaged in an extraordinary years-long armed robbery conspiracy that involved exceptional acts of violence and brutality and the theft of millions of dollars' worth of narcotics and other property.  (PSR ¶¶ 26-49.)  Granting Lorenzano the relief he seeks would disserve the above important sentencing factors.  Accordingly, Lorenzano's motion is denied. Cf. Castillo, 2021 WL 268638, at *7; Musa, 2020 WL 6873506, at *13; Seshan, 2020 WL 2215458, at *4.

### III.  Conclusion

For the reasons set forth above, Defendant Victor Lorenzano's motion for a reduction in sentence is DENIED.

The Clerk of Court is directed to terminate the motion at ECF No. 247.

**SO ORDERED.**

Dated:  New York, New York
        February 24, 2021

John F. Keenan
United States District Judge